The Honorable Bill Walters State Senator P.O. Box 280 Greenwood, Arkansas 72936
Dear Senator Walters:
This is in response to your request for an opinion on three separate questions arising in your district. Your questions will be set out below and answered in the order posed.
You first question is as follows: Is it proper for Scott County to approve a contract in excess of $100,000.00 for reappraisal and reassessment services without advertising or taking bids?
In response to your question, please note that I have enclosed a copy of Opinion No. 90-037, wherein it was concluded that the employment of competitive bidding is not required in such instances.
Your second question is as follows: Is it proper for an officer of a regional library board to hold funds on behalf of the regional library or should the funds be turned over to the county treasurer and be held by the county treasurer?
You have mentioned specifically that Scott and Sebastian counties operate a regional library board. The answer to your question will depend upon what type of funds are involved. For example, it is in my opinion clear that if the funds involved are the proceeds of a tax levied under the authority of amendment 38 to the Arkansas Constitution, then they are to be held by the respective county treasurers. See Arkansas Constitution, Amendment 38 2.
Additionally, however, if the funds involved were obtained by the regional library board by "gift, bequest, devise, or donation", then it is my opinion that the regional board may be within its authority in keeping and managing these funds itself. This conclusion is reached by a construction of A.C.A. 13-2-401 which provides in pertinent part that:
 (b) The county court shall also have the power to establish in cooperation with another county or other counties, a joint free library for the benefit of the cooperating counties.
Additionally, 13-2-404 (b) provides that:
 Funds received by the county free library by gift, bequest, devise or donation shall remain in the custody of the county library board, if a board has been created.
It is my opinion that this provision would, as well, be applicable to a regional board created under the authority of 13-2-401. It should be noted, however, that a regional board may also be created by virtue of an interlocal cooperation agreement. In such in instance, it is my opinion that any relevant language in the agreement will control the responsibility as to the keeping of the funds, as we have found no requirement of law which would require these funds (funds received by gift, bequest, devise or donation) to be kept by the county treasurer.
A third type of funds, however, should be mentioned. There is apparently no provision of law which would govern the proper custody of state-aid funds received by a regional library. There is simply no provision of state law which governs this issue. There is no provision requiring the county treasurer to maintain custody of these funds, and there is no provision authorizing a regional library board to retain custody of them. As a practical matter, however, when monies are received by this regional library board, there is more than one county treasurer involved. Are state-aid funds to be divided between the two county treasurers prorata? On what basis? As stated previously, there is no provision of law governing this question. Practical concerns, however, may militate in favor of the regional board retaining custody of the funds. This is an area, however, requiring legislative clarification.
Your third question is as follows:
 Is it proper for the Waldron School Board to routinely meet at 6:30 on the second Tuesday of each month in executive session prior to its regular 7:00 meeting without commencing the regular meeting and voting to go into executive session?
Your question implicates the Arkansas Freedom of Information Act, ("FOIA"), codified at A.C.A. 25-19-101 et seq. It should be noted that under this act, this office has previously opined that the Little Rock School Board could not meet informally in executive session to hear recommendations from the superintendent prior to the Board's formal session. See Opinion of the Attorney General issued January 22, 1968, a copy of this is enclosed.
Your specific question, however, as I understand it, is whether the Board must convene in a public regular session and vote to go into executive session. The act does not expressly cover this question, but this office has previously opined that it does require that the governing body announce the purpose of the executive session prior to retiring. Informal Opinion No. 81-28. Also, it has been opined that certain notice provisions in the act are applicable even to executive sessions. See Attorney General Opinion issued November 22, 1971. Additionally, the governing body must reconvene in public session and vote on any resolution, ordinance, rule, contract, regulation, or motion adopted in the executive session or it will have not legal effect. A.C.A.25-19-106 (c)(4). Finally, 25-19-106(3) provides that executive sessions may never be held to defeat the reason or the spirit of the act.
Executive sessions may only be called for the reasons listed in the FOIA, that is, for the purposes of considering employment, appointment, promotion, demotion, disciplining, or resignation of any public officer or employee. If the Waldron School Board is meeting in executive session prior to its regular meeting for other than these purposes, then these purposes, then its conduct violates the FOIA. The reason that executive sessions are usually "called",. whether by motion or by vote, is that one of these situations requires consideration. A routine pre-meeting gathering may be suspect under the FOIA not because it has not been properly "called" or voted on, but because of the content of the discussions undertaken therein.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.
Sincerely,
STEVE CLARK Attorney General
SC:arb